Filed 10/12/22  In re H.C. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re H.C., a Person Coming Under the Juvenile Court Law. | B313963 (Los Angeles County Super. Ct. No. 21CCJP01549) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>C.C. et al.,<br><br>    Defendants and Appellants. | |

APPEALS from jurisdictional and dispositional orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant C.C.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant D.W.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

The Los Angeles County Department of Children and Family Services (DCFS or the agency) commenced dependency proceedings concerning H.C., who was three years old when the initial petition was filed.  The juvenile court later sustained an amended petition, which alleged that H.C.'s mother and her male companion exposed H.C. to a substantial risk of serious physical harm by engaging in violent altercations in H.C.'s presence, and that H.C.'s father likewise presented a substantial risk of serious physical harm to the child because he had perpetrated acts of domestic violence against mother and other women.  The court declared H.C. a dependent of the court, removed H.C. from mother's and father's custody, and ordered DCFS to allow the parents to have monitored visits with the child.  Mother and father appeal from these jurisdictional and dispositional rulings.

While the parents' appeals were pending, the juvenile court released H.C. to mother, issued a juvenile custody order awarding mother sole legal and physical custody of H.C. and allowing father to have monitored visits with the child, and terminated dependency jurisdiction.  On DCFS's motion, we dismissed as moot (a) father's appeal inasmuch as he raised a claim under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and (b) mother's appeal to the extent she contested the order removing H.C. from her custody.

2

Regarding the remainder of parents' appeals, we conclude substantial evidence supports the juvenile court's order asserting jurisdiction on account of father's acts of domestic violence toward (i) mother and (ii) father's romantic partner; and substantial evidence supports the order removing H.C. from father's custody because of the substantial risk of detriment he posed to the child. We also conclude that the court did not abuse its discretion in authorizing father to have only monitored visits. Because the juvenile court did not err in asserting jurisdiction over H.C. based on father's violent behavior, we decline to reach mother's challenges to the court's other jurisdictional findings. Accordingly, we affirm the court's jurisdictional and dispositional rulings.

## PROCEDURAL BACKGROUND

We summarize only those aspects of the procedural background that are relevant to our disposition of the instant appeals.

On April 6, 2021, DCFS filed a juvenile dependency petition concerning H.C., who was then three years old. The petition asserted jurisdiction over H.C. pursuant to Welfare and Institutions Code[1] section 300, subdivisions (a) and (b)(1).

On April 9 and 12, 2021, the juvenile court held a detention hearing. On the first day of the hearing, the court found that father is the presumed father of H.C. On the second day of the hearing, the court detained H.C. from mother and released the child to father.

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

3

On May 18, 2021, DCFS filed a first amended petition, asserting one jurisdictional count under section 300, subdivision (a) (i.e., count a-1) and two jurisdictional counts under subdivision (b)(1) (i.e., counts b-1 and b-2).

Counts a-1 and b-1 of the first amended petition both allege the following: "The child['s] . . . mother . . . and the mother's male companion, [J.T.[2]] have a history of engaging in violent altercations in the presence of the children. On or about 2/19/2021, the male companion slapped the mother's face with the back of the male companion's hand, inflicting a laceration to the mother's lip. The mother and the male companion repeatedly struck each other's faces, resulting in the mother falling to the floor. The male companion grabbed the mother's shirt. The mother and the male companion pushed each other. The mother sustained bruising on the mother's leg and face. The male companion threw the mother's cell phone over a balcony. The mother and the male companion struggled over a suitcase. On a prior occasion, the male companion broke the mother's phone. The mother kicked the male companion's face, inflicting a laceration to the male companion's face. The male companion struck the mother's face with the back of the male companion's hand, inflicting a laceration and bleeding to the mother's face. On prior occasions, the mother and the male companion engaged in violent altercations. The mother and the male companion violated a temporary restraining order protecting the mother from the male companion. The violent conduct by the mother and the male companion endangers the child's physical health and

---

[2] J.T. is not a party to this appeal.

safety, and places the child at risk of serious physical harm, damage and danger."

Count b-2 of the first amended petition avers: "The child['s] . . . mother . . . and father . . . have a history of engaging in physical altercations. On a prior occasion, mother[ ] . . . and the father . . . engaged in a violent altercation, wherein the father struck the mother's hand while the mother held a glass cup, resulting in the cup breaking and the mother sustaining a laceration on the mother's knee. On a prior occasion, the father struck the side of mother's face while she was holding the child . . . . The father . . . has a history of violent behavior in his interpersonal relationships with women. On a prior occasion, the father rammed his car into the car of then girlfriend[, M.B.] Father was convicted of Felony Vandalism. On a prior occasion, father violently pulled his girlfriend [D.J.'s] purse off her shoulder and robbed her of $240.00. Such violent conduct by the father against the mother and other women endangers the child's physical health and safety, and places the child at risk of serious physical harm, damage and danger."

On May 19, 2021, DCFS filed an ex parte application that disclosed that two days earlier, the agency had detained H.C. from father because he had been arrested on an outstanding no bail felony warrant for his conviction for felony vandalism. The agency requested that the juvenile court detain the child from father.

On May 21, 2021, the juvenile court held another detention hearing, detained H.C. from father, and ordered that H.C. remain placed in shelter care under the supervision of DCFS.

The juvenile court held an adjudication and disposition hearing on July 8, 2021. The court sustained counts a-1, b-1, and

b-2 of the first amended petition.  The court declared H.C. a dependent of the court; removed the child from her parents' physical custody; ordered DCFS to provide mother and father with reunification services, including a domestic violence program for father; and permitted the parents to have only monitored visits with the child.

On July 8, 2021, father appealed the juvenile court's jurisdictional and dispositional rulings.  On July 14, 2021, mother appealed from these rulings as well.

On October 29, 2021, the juvenile court released H.C. to mother's custody and ordered DCFS to provide family maintenance and preservation services to mother.

On April 29, 2022, the juvenile court "[found] that those conditions which would justify the initial assumption of jurisdiction under . . . section 300 no longer exist and are not likely to exist if supervision is withdrawn and the Court terminates jurisdiction."  The court stayed its ruling terminating jurisdiction "pending the receipt of the Juvenile Custody Order on 05/06/2022 giving Mother full legal and physical custody."

On May 6, 2022, the juvenile court issued a juvenile custody order, lifted the stay, and terminated jurisdiction.  The juvenile custody order granted sole legal and physical custody of H.C. to mother, and authorized father to have only monitored visitation with the child because he did not make substantial progress in certain court-ordered programs, including a domestic violence treatment program.[3]

---

[3] This court previously granted DCFS's request for judicial notice of the May 6, 2022 minute order and the juvenile custody order that was issued on that date.  We, sua sponte, take judicial

6

On July 14, 2022, DCFS moved to dismiss as moot (a) father's appeal insofar as he raised a claim under ICWA, and (b) mother's appeal to the extent it challenged the juvenile court's dispositional order removing the child from her custody. On August 8, 2022, we granted DCFS's motion.

## DISCUSSION

**A. The Juvenile Court Did Not Err in Sustaining Count B-2, Removing H.C. from Father's Custody, or Authorizing Father to Have Only Monitored Visits with H.C.**

Mother and father contest the juvenile court's order sustaining count b-2 of the first amended petition, which avers that father's "violent conduct . . . against . . . mother and other women endangers the child's physical health and safety, and places the child at risk of serious physical harm, damage and danger."[4] Father also challenges the court's order removing H.C. from his custody. Similarly, father argues the court erred in authorizing him to have only monitored visits with the child "because there was no risk of harm from unmonitored visits." Because each of these appellate claims concerns whether father's acts of domestic violence posed a substantial risk of serious physical harm to H.C., we address these contentions together.

notice of the juvenile court's October 29, 2021 and April 29, 2022 minute orders as well. (Evid. Code, §§ 452, subd. (d), 459.)

[4] As we explain in Discussion, part B, *post*, mother's challenges to the juvenile court's jurisdictional findings arguably survived DCFS's motion to dismiss. Thus, in an abundance of caution, we consider—but ultimately reject—mother's contest to count b-2.

7

Before proceeding to the merits, we discuss the applicable standards of review.

Section 300, subdivision (b)(1) authorizes the juvenile court to assert dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . ." (§ 300, subd. (b)(1).) "Exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b). . . . ' "[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from a substantial risk of encountering the violence and suffering serious physical harm or illness from it." [Citation.]' " (*In re R.C.* (2012) 210 Cal.App.4th 930, 941 (*R.C.*).)

"Proof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300." (§ 355, subd. (a).) " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings [of the juvenile court,] . . . we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the [juvenile] court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the [juvenile] court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to

8

support the findings of the [juvenile] court.  [Citations.]" ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

Concerning orders removing children from their parents, section 361, subdivision (c) provides in pertinent part:  "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶] . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (§ 361, subds. (c) & (c)(1).)

In reviewing a removal order, " 'the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.  Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.' [Citation.]"  (See *In re V.L.* (2020) 54 Cal.App.5th 147, 149, 155 (*V.L.*), quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

"No visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).)  "The power to regulate visits between dependent children and their parents rests with the juvenile

9

court and its visitation orders will not be disturbed on appeal absent an abuse of discretion." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1070.) "A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' [Citation.]" (*In re Caden C.* (2021) 11 Cal.5th 614, 641 (*Caden C.*).) In reviewing " 'the *factual basis* for an exercise of discretion,' " "a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts[,]' " and " ' " '[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' [Citations.]" (See *id.* at pp. 640–641, italics added.)

Here, the record contains evidence from which the juvenile court reasonably could have found it highly probable that father's propensity to engage in violent conduct presented a substantial risk of serious physical harm to H.C.

First, DCFS proffered evidence that father had physical altercations with mother. According to the detention report filed at the outset of the proceedings, mother told the agency that when H.C. "was approximately 1 year[ ] old," (i.e., circa 2018), "father hit mother's hand [while] mother was holding a glass cup[, t]he cup broke as a result[,] . . . mother sustained a cut on her knee[,] . . . [and] she and . . . father separated as a result." The supplemental report filed on May 17, 2021 shows father conceded that during that incident, he and mother "were arguing and she was ignoring [him] so [he] kind of slapped her arm to get her attention . . . ." Further, the supplemental report shows that when a social worker asked father about a January 22, 2019 referral alleging that he struck mother in the face while she was

10

holding H.C., father admitted that he " 'smacked' " mother as she was holding H.C. because he had " 'los[t his] cool' on that day."[5]

Second, the agency introduced evidence that father perpetrated violent acts against the person identified as his "current girlfriend" in the supplemental report, i.e., D.J. (Boldface omitted.) A police report attached to the supplemental report shows D.J. told officers that on April 24, 2020, father (a) demanded $100 from D.J.; (b) forcibly removed a purse from D.J. after she refused to give him the money, thereby ripping D.J.'s shirt; (c) took $240 out of her purse; and (d) fled the scene. The police report further indicates D.J. told the police "she has had approximately twenty (20) unreported domestic violence incidents with" father. Also, according to the police report, D.J. showed officers "a bite mark on her left breast which she stated was from [father] biting her two and a half weeks" before the April 24, 2020 robbery.

---

[5] In her opening brief, mother suggests the juvenile court's ruling sustaining count b-2 should be reversed in part because the first amended petition "does not articulate when the domestic violence occurred[,] . . . the details of the incident when [the] cup broke[, or the] . . . time or context [of the incident in which] Father hit Mother while she was holding [H.C.]" Mother does not clarify whether she is raising a challenge to the adequacy of the pleading that is independent of her claim of insufficiency of the evidence vis-à-vis count b-2. Accordingly, she has waived any such contest to the adequacy of the pleading. (See *In re J.F.* (2019) 39 Cal.App.5th 70, 79 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)

Additionally, the supplemental report contains evidence that H.C. witnessed at least some instances of domestic violence father perpetrated against D.J. The report indicates that on May 6, 2021, father disclosed that he, D.J., and H.C. were living together in his apartment. The report also states that on the same day that the agency had interviewed father, a social worker asked H.C. whether father "is nice to his girlfriend," and H.C. responded, " '[H]e doesn't talk to her nice[, h]e pulled her hair.' "

Relying on this evidence, the juvenile court could find that father engaged in a pattern of violent behavior toward mother and D.J., and that he did not hesitate to commit such violent acts in H.C.'s presence. Because " '[p]ast violent behavior in a relationship is 'the best predictor of future violence' " (*R.C.*, *supra*, 210 Cal.App.4th at p. 942), we conclude the juvenile court reasonably found a high probability that father posed a substantial risk of serious physical harm to H.C.[6] (See also *A.F.*, *supra*, 3 Cal.App.5th at p. 289 ["Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection. [Citation.] The California Supreme Court has observed that, depending upon the circumstances, a 'past failure [can be] predictive of the future.' "].)

---

[6] In light of this conclusion, we need not address whether substantial evidence supports the juvenile court's conclusion that "father rammed his car into the car of then girlfriend," M.B. (Cf. *In re A.F.* (2016) 3 Cal.App.5th 283, 292, fn. 3 (*A.F.*) [upon finding that "the mother's substance abuse [was] sufficient to support removal," the appellate court declined to "discuss the additional grounds for removal" the mother had challenged].

Father resists this conclusion, arguing that "[t]he domestic violence incidents detailed in the [first amended] petition were remote in time and unlikely to recur"; "the parents were no longer together and only communicated when it came to the child"; father had "enrolled in a 52-week domestic violence program . . . a week before the jurisdiction hearing"; the juvenile court had released H.C. to father's care at the beginning of the proceedings; and H.C. told the agency "she liked being with [father ]and nothing scared her."

Yet, the most recent incident of domestic violence documented by DCFS was the robbery that occurred in April 2020, which was a little over a year before the July 8, 2021 adjudication and disposition hearing. Furthermore, the evidence described above demonstrates father committed at least four violent acts against either mother or D.J. over a three-year period. In addition, it is not speculative to conclude father will likely encounter mother and D.J. in H.C.'s presence in the foreseeable future, given that the supplemental report suggests D.J. elected to continue to reside with father after he had assaulted her, and mother and father have both shown an interest in raising H.C. (e.g., they each sought custody of the child at the July 8, 2021 hearing). Additionally, the supplemental report evidences father minimized the gravity of his misconduct, given the report shows he characterized these incidents of violence as mere " 'problems' " he had in relationships with women, he claimed to have been " 'young at the time' " these relatively recent incidents transpired, and he "did not provide any details as to what had occurred" when a social worker asked

him about the April 2020 robbery.[7]  Viewing the record in the light most favorable to the juvenile court's rulings as we must (see *I.J.*, *supra*, 56 Cal.4th at p. 773; *V.L.*, *supra*, 54 Cal.App.5th at p. 155; *Caden C.*, *supra*, 11 Cal.5th at pp. 640–641), we discern no error in the juvenile court's finding that on the date of the adjudication and disposition hearing, father continued to present a substantial risk of serious physical harm to H.C.

Father also argues he accidentally hit the glass cup that injured mother; he did not strike mother while she was holding H.C. in 2019; "[p]rior to the dependency matter, [father] was visiting the minor at his home in San Diego without incident"; D.J. told DCFS that father had not perpetrated any acts of domestic violence against her; and H.C. "immediately recanted" her claims that father "did not speak nicely to" D.J. and "pulled her hair."  In addition, mother points out the jurisdiction/disposition report demonstrates she "denied that she and father have issues with domestic violence in their relationship."  We reject these arguments because father and mother are, in essence, asking us to reweigh the evidence, disregard the court's credibility determinations, and exercise independent judgment to make our own factual findings.  (See *I.J.*, *supra*, 56 Cal.4th at p. 773; *V.L.*, *supra*, 54 Cal.App.5th at p. 155; *Caden C.*, *supra*, 11 Cal.5th at pp. 640–641.)

Lastly, father maintains that "[i]nstead of removing [H.C.] from [father], the juvenile court should have ordered

---

**7** (See *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 858–859, 865 [holding that "a parent's lack of insight may be considered by the juvenile court when assessing whether a child may safely be returned home," italics & capitalization omitted].)

14

unannounced home visits and offered [father] services to assist him in caring for the minor, such as preservation services, family therapy, or wraparound services." Because "[u]nannounced visits can only assess the situation . . . at the time of the visit" (see *A.F.*, *supra*, 3 Cal.App.5th at p. 293), and, as discussed above, the juvenile court reasonably found there was clear and convincing evidence that father's violent behavior presented a substantial risk of serious physical harm to H.C., the court did not err in impliedly finding that unannounced home visits would not have meaningfully reduced that threat of injury. Furthermore, although other services had the potential *eventually* to mitigate the danger father posed to his daughter (e.g., a domestic violence program), the juvenile court was well within its discretion to take steps to protect H.C. until father had mitigated that risk by participating in these services. (See *I.J.*, *supra*, 56 Cal.4th at p. 773 [" 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' "].)

For the foregoing reasons, we conclude that substantial evidence supports the juvenile court's order sustaining count b-2 and removing H.C. from father's custody, and that the court did not abuse its discretion in allowing father to have only monitored visits with the child.

## B. We Decline to Reach the Merits of Mother's Challenges to Count A-1 and Count B-1

In ruling on DCFS's motion to dismiss, we issued the proposed order that the agency had submitted, which provides: "Respondent's Motion for Partial Dismissal of Father's Appeal (Notice of Appeal filed July 8, 2021) with respect to his challenge to the Indian Child Welfare Act and Mother's Appeal (Notice of

15

Appeal filed July 14, 2021) is hereby granted." The text of this order suggests we dismissed *the entirety* of mother's appeal. Yet, DCFS contended in its motion that we should dismiss as moot "mother's challenge to the *dispositional order removing the child from her custody . . . .*" (Italics added.) The agency did not seek the dismissal of mother's challenge to the juvenile court's jurisdictional findings.

Consequently, mother's jurisdictional challenges arguably survived DCFS's motion. Assuming arguendo that mother's challenges to counts a-1 and b-1 have not been dismissed, we nonetheless decline to reach the merits of these appellate claims.

"Under the doctrine of justiciability, courts generally do not act upon or decide moot questions or abstract propositions, nor do they issue advisory opinions. [Citation.] 'An important requirement for justiciability is the availability of "effective" relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status.' [Citation.] 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence' or is unchallenged." (*In re L.O.* (2021) 67 Cal.App.5th 227, 237 (*L.O.*).)

"On the other hand, an exception to this general rule has been recognized: '[W]e generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other

16

consequences for [the appellant], beyond jurisdiction" [citation].' [Citation.]" (*L.O.*, *supra*, 67 Cal.App.5th at p. 237.)

We found in Discussion, part A, *ante* that substantial evidence supports count b-2. It follows that mother's objections to counts a-1 and b-1 are not justiciable. (See *L.O.*, *supra*, 67 Cal.App.5th at p. 237.) Furthermore, we choose not to exercise our discretion to decide whether substantial evidence supports these other jurisdictional allegations.

First, mother's jurisdictional challenges cannot serve as the basis for an attack on the order removing H.C. from mother's custody because, as explained earlier in this section, we already dismissed as moot mother's appeal from that dispositional ruling.

Second, shortly before the juvenile court terminated dependency jurisdiction, the court "[found] that those conditions which would justify the initial assumption of jurisdiction under . . . section 300 no longer exist and are not likely to exist if supervision is withdrawn and the Court terminates jurisdiction." When that finding is read in conjunction with the award of sole legal and physical custody of H.C. to mother, it is evident the court found that mother no longer poses a substantial risk of serious physical harm to her child. Thus, in any future dependency proceeding, DCFS will bear the burden of demonstrating that mother's behavior has once again changed such that the assertion of jurisdiction is proper. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1495 ["[T]he agency will be required to demonstrate jurisdiction [in any such future dependency proceeding] by presenting evidence of *then current* circumstances placing the minor at risk," italics added].) Consequently, leaving counts a-1 and b-1 undisturbed would have no apparent impact on mother's rights.

17

In sum, even if we did not previously dismiss mother's jurisdictional claims, we elect not to review the juvenile court's decision to sustain counts a-1 and b-1.

**DISPOSITION**

We affirm the juvenile court's jurisdictional and dispositional orders.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

CHANEY, J.

KELLEY, J.*

---

**\*** Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.